**RECORD NO. 14-4199(L); 14-4212**

In The

# United States Court Of Appeals

## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## JERMAINE STEPHEN FINCH; JEROME ELLIOTT FINCH,

*Defendants – Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO**

_____

## REPLY BRIEF FOR JEROME ELLIOTT FINCH
_____

**Craig M. Cooley**
**COOLEY LAW OFFICE**
**1000 Centre Greenway**
**Suite 200**
**Cary, NC  27513**
**(919) 228-6333**

*Counsel for Appellant Jerome E. Finch*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

## TABLE OF CONTENTS

**PAGE:**

TABLE OF CONTENTS.............................................................................................i

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ...................................................................................................1

ARGUMENTS ........................................................................................................3

     I.     Extending the Traffic Stop to Ask About the Rental
           Agreement ....................................................................................3

          A.    Evasive Lane Change Factor .........................................3

          B.    Nervousness Factor.......................................................5

          C.    Drug Corridor Factor ...................................................7

CONCLUSION .......................................................................................................8

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

**PAGE(S):**

**FEDERAL CASES**

*United States v. Branch*,
   537 F.3d 328 (4th Cir. 2008) ........................................................................2

*United States v. Whren*,
   517 U.S. 806 (1996) .....................................................................................1

**STATE CASES**

*State v. Ofori*,
   906 A.2d 1089 (Md. App. 2006) ..................................................................8

*State v. Velazquez-Perez*,
   756 S.E.2d 869 (N.C. App. 2014) ................................................................6

**INTRODUCTION**

Before addressing the Government's brief, counsel must identify the facts and

legal issues *not* in dispute:

First, Jerome Finch and the Government agree that Officer McDonough's

initial traffic stop was justifiable.[1]    As the Government correctly noted, "the

---

[1] *Appellant's Br.*, at 23.  Appellants' brief, unfortunately, presents contradictory arguments regarding the legality of Officer McDonough's initial traffic stop.  For instance, on page 23, appellants argue the initial stop was "justifiable."  However, on pages 42-46, appellants argue the stop was not justifiable.

Undersigned counsel (Cooley) wrote the entire opening brief, *excluding pages 42 through 46*.  Counsel's final draft did not challenge Officer McDonough's initial stop.  However, when counsel sent his final draft to Jermaine Finch's counsel (Crump), Mr. Crump incorporated the arguments presented on pages 42 through 46 without counsel's knowledge and then filed the brief.  *After* filing the brief, Mr. Crump informed counsel he had incorporated the arguments on pages 42 through 46.

The contradictory arguments are inexcusable and embarrassing for a joint brief.  Counsel, though, was dealing with a family medical emergency (*i.e.*, infant daughter was [and still is] in the NICU at Sick Kids Hospital in Toronto) when he forwarded his final brief to Mr. Crump and did not ask to review the brief before Mr. Crump filed it.  Based on his previous discussions with Mr. Crump, counsel assumed he would simply edit and file final brief as it was sent. The Court is presumably well aware of what happens when one assumes something.

Thus, to set the record straight, Jerome Finch is *not* challenging Officer McDonough's initial traffic stop.  Even if it was pretexual, as Mr. Crump seems to suggest, this does not make it unconstitutional. *See United States v. Whren*, 517 U.S. 806 (1996).  Jerome Finch's primary arguments concern Officer McDonough's actions *after* he completed the traffic stop and asked to review the Impala's registration and have Fife, his drug dog, smell around the Impala for drugs.

1

observation of even one traffic violation provides law enforcement with a constitutional basis to stop a vehicle and investigate."[2]

Second, neither party disputes Judge Osteen's ruling that, based on Officer McDonough's reason for stopping the Impala (*i.e.*, speeding, unsafe lane change, and traveling too closely), he completed his traffic stop once he obtained Jermaine Finch's drivers license and the Impala's registration, and ran a computer check on Jermaine Finch. *See* JA 223-225.

Third, neither party disputes that, after completing his computer background check of Jermaine Finch, Officer McDonough needed reasonable suspicion to prolong the traffic stop to ask for the Impala's rental agreement.

_____

The primary dispute, therefore, is whether Officer McDonough had reasonable suspicion to prolong the traffic stop to review the rental agreement and have Fife, his drug dog, sniff around the Impala.  Judge Osteen said Officer McDonough had reasonable suspicion to ask about and review the rental agreement for the following reasons:

      1.  The Impala's so-called "evasive" lane change onto Highway 70.

      2.  Jermaine and Jerome Finch appeared nervous.

---

[2] *Government's Br.*, at 8 (citing *United States v. Branch*, 537 F.3d 328 (4th Cir. 2008)).

3.  Jermaine and Jerome Finch had prior drug convictions.

4.  Interstate 85 is a known drug corridor.

In their brief, Jermaine and Jerome Finch thoroughly explain why and how Judge Osteen clearly erred as to the first, second, and fourth factual findings.[3]  The Government disagrees with their arguments, but the Government's disagreements are supported by nothing more than conclusory statements of law.  Also, the Government entirely avoided Jermaine and Jerome's last argument regarding how law enforcement goes about classifying an interstate as either a "drug corridor" or a "non-drug corridor."

## ARGUMENTS

### I.    Extending the Traffic Stop to Ask About the Rental Agreement

#### A.    Evasive Lane Change Factor

The Government misconstrues Jermaine and Jerome's arguments relating to this factor.  Here, the Government believes the primary argument made in their brief was that Judge Osteen erred because there was no dash-cam video of the so-called evasive lane change:

> In a perfect world, it may be optimal to resolve the factual dispute as to the proper characterization of the maneuver of the Impala by simply watching a video recording of the events.  However, the mere fact that there is not video of

---

[3] *Appellant's Br.*, at 31-41.

3

the incident does not mean that Officer McDonough's testimony is "unreasonable."[4]

The Government is incorrect. Jermaine and Jerome's primary argument is *not* that there is no dash-cam video, but that Officer McDonough's actions in his patrol car contradict his suppression hearing testimony. At the suppression hearing, for instance, Officer McDonough said when he saw the Impala make the evasive lane change, he knew right then and there he was going to stop the Impala and search it for drugs (JA 64-65, 227). His testimony, however, conflicts with his behavior in his patrol car when he allegedly saw the Impala make the evasive lane change. Despite his strong feelings of when he saw the Impala evasively change lanes and the fact the Impala potentially placed other drivers in danger by making an unsafe lane change, Officer McDonough did not activate his emergency lights and immediately initiate a traffic stop (JA 64-65). His refusal to activate his emergency lights undermines his claim that the Impala's lane change was evasive.

The incongruence between Officer McDonough's suppression hearing testimony and his patrol car actions, moreover, goes hand-in-hand with his proclivity to embellish key facts regarding his traffic stops (JA 145, 212). Additionally, Officer McDonough's befuddling decision not to immediately activate his lights prevented his dash-cam recorder from capturing the so-called evasive lane change on video.

---

[4] *Government's Br*., at 13.

This further undermines his truthfulness and credibility.  In short, there is ample evidence in the record to find Judge Osteen's evasiveness finding clearly erroneous.

While the Finchs definitely argued that the lack of video evidence undermined Officer McDonough's credibility and testimony, this was not the only argument presented in their brief.  The Government, though, only addressed this argument and completely ignored the obvious contradictions between Officer McDonough's suppression hearing testimony and his actions immediately following the so-called evasive lane change.  The Government's avoidance speaks volumes.  The Court should find Judge Osteen clearly erred regarding his evasiveness factual finding.

### B.    Nervousness Factor

The Government disagrees with Jermaine and Jerome's nervousness argument by focusing on Judge Osteen's finding that Jermaine Finch's (passenger) hand was "visibly shaking" when Officer McDonough requested Jerome's (driver) drivers license and registration (JA 228-229).[5]  The Government misconstrues Jermaine and Jerome's argument.

Even if Officer McDonough's suppression hearing is true, *i.e.*, Jermaine appeared slightly nervous when Officer McDonough initially approached the Impala, Jermaine's level of nervousness is insufficient to be incorporated into a

---

[5] *Government's Br.*, at 15.

5

reasonable suspicion finding.  As one appellate court recently said: "Some degree of nervousness is common when a person is stopped and detained by law enforcement[.]" *State v. Velazquez-Perez*, 756 S.E.2d 869, 875 (N.C. App. 2014). In other words, if normal nervousness can give rise to reasonable suspicion, the Fourth Amendment rights of those traveling in automobiles will be eviscerated.  The Fourth Amendment, therefore, must distinguish between expected nervousness and excessive or unusual nervousness.

Judge Osteen initially got it right when he mentioned "excessive or unusual" nervousness (JA 228-229).  After viewing the dash-cam video, Judge Osteen concluded that Jermaine Finch did *not* exhibit "excessive or unusual" nervousness *before* Officer McDonough requested the rental agreement (JA 228-229).  Judge Osteen, mind you, said the traffic stop had ended by the time Officer McDonough requested the rental agreement.  In other words, neither Jermaine Finch nor Jerome Finch exhibited "excessive or unusual" nervousness *before* Officer McDonough requested the rental agreement.  If neither was "excessively" or "unusually" nervous *before* Officer McDonough requested the rental agreement, nervousness must be eliminated from the reasonable suspicion algorithm.

Consequently, while Jermaine Finch may have appeared "excessively" or "unusually" nervous *after* Officer McDonough requested the rental agreement, his behavior, at that point, was irrelevant because Officer McDonough did not have the

6

legal authority, *i.e.*, reasonable suspicion, to prolong the traffic stop to ask about the rental agreement.  The Court should find Judge Osteen clearly erred regarding his nervousness factual finding.

### C.    Drug-Corridor Factor

The Government did not even address this factor and for good reason: there are no national standards or guidelines as to how law enforcement determines whether a particular interstate or highway is or is not a drug-corridor.  In other words, while law enforcement officers frequently rely on the drug corridor factor to produce reasonable suspicion, counsel has yet to find one article or legal opinion explaining how law enforcement officers distinguish between drug corridor interstates and non-drug corridor interstates.  The absence of evidence explaining how this demarcation is actually done renders this finding of no value and irrelevant.  The Court should find Judge Osteen clearly erred regarding his nervousness factual finding.

_____

When the Court eliminates the evasiveness, nervousness, and drug corridor factors, the only remaining factor is the criminal history factor, but Judge Osteen correctly gave little weight to this factor (JA 230).  In other words, without the evasiveness, nervousness, and drug corridor factors Officer McDonough did not have reasonable suspicion to prolong the traffic stop to ask about the rental agreement.

7

It also means Fife (the drug dog) should have never been employed to search for drugs. One appellate court said it best when it wrote: "[T]he use of a drug-sniffing canine [is] an effective investigative tool *if* the police can squeeze it in before the buzzer sounds[.]" *State v. Ofori*, 906 A.2d 1089, 1104 (Md. App. 2006) (emphasis added). Here, the buzzer ended when Officer McDonough completed the requisite tasks associated with traffic stop's purpose, *i.e.*, obtaining license and registration, searching the law enforcement data bases, and issuing his warning to Jermaine and Jerome. Fife's employment, therefore, came *after* the buzzer, meaning any information gleaned from his superior olfactory system is irrelevant and inadmissible because it is a by-product of an unreasonable seizure and search.

## CONCLUSION

**WHEREFORE**, the Court must reverse Judge Osteen's ruling and suppress the evidence uncovered by Fife because Officer McDonough lacked reasonable suspicion to prolong the traffic stop violating Jermaine's and Jerome's Fourth Amendment right to be free from unreasonable seizures and searches.

8

Respectfully submitted this the **7th day** of **November**, **2014**.

*/s/Craig M. Cooley*
N.C.S.B. #45627
Cooley Law Office
1000 Centre Greenway, Ste. 200
Cary, NC 27513
919-228-6333 (office)
647-502-3401 (cell)
craig.m.cooley@gmail.com
Attorney for Jerome Finch

9

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.32(a)(7)(B) because:

This brief contains <u>1,685</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

/s/ Craig M. Cooley
Craig M. Cooley

*Counsel for Appellant*
*Jerome E. Finch*

Dated:  November 7, 2014

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on November 7, 2014, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Terry Michael Meinecke
Ripley Eagles Rand
OFFICE OF THE UNITED STATES ATTORNEY
101 South Edgeworth Street
4th Floor
Greensboro, NC  27401

*Counsel for the Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Karen R. Taylor
Karen R. Taylor
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA 23219